## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| **LISA DEOSARAN and** | § | |
| **RAYMOND GOODWIN,** | § | |
|  | § | |
| **Plaintiffs,** | § | |
|  | § | |
| **v.** | § | **Civil Action No. 4:16-cv-00919-O-BP** |
|  | § | |
| **ACE CASH EXPRESS, INC.,** | § | |
|  | § | |
| **Defendant.** | § | |
|  | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 17) and Brief in Support (ECF No. 18), both filed on January 10, 2017; Defendant's Response to Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 22), filed on January 18, 2017; Defendant's Motion to Compel Arbitration and to Dismiss Action (ECF No. 20) and Brief in Support (ECF No. 21), both filed on January 13, 2017; Plaintiffs' Response to Defendant's Motion to Compel Arbitration (ECF No. 23), filed on January 27, 2017; and Defendant's Reply to Plaintiffs' Response (ECF No. 25), filed on February 10, 2017.

Based upon a full review of the relevant pleadings on file and applicable legal authorities, the undersigned RECOMMENDS that Judge O'Connor GRANT Defendant's Motion to Compel Arbitration and to Dismiss Action (ECF No. 20) WITH PREJUDICE as to the claims of Plaintiff Raymond Goodwin, DENY Defendant's Motion as to the claims of Plaintiff Lisa Deosaran, STAY Plaintiff Deosaran's claims during the pendency of the Goodwin arbitration, and DENY Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 17) as moot.

## I. BACKGROUND

Plaintiffs Lisa Deosaran ("Deosaran") and Raymond Goodwin ("Goodwin") brought this action against Defendant Ace Cash Express, Inc. ("Defendant") for alleged violations of the Telephone Consumer Protection Act ("TCPA"). ECF No. 8. Goodwin entered a written Consumer Installment Loan Agreement ("Loan Agreement") and received a loan serviced by Defendant in the principal amount of $550.00 on January 6, 2016. ECF No. 21. Plaintiffs allege that Defendant made calls using an automated dialing system to a cellular phone that they shared after they had revoked their consent for Defendant to do so. ECF No. 8. Defendant contends that Goodwin must arbitrate his claims because he signed a separate Arbitration Agreement (ECF No. 21-3), which was incorporated in the Loan Agreement (ECF No. 21-2). ECF No. 20. Defendant argues that Deosaran must arbitrate her claims as well under the doctrine of equitable estoppel. *Id.*

## II. LEGAL STANDARDS

In the Federal Arbitration Act ("FAA"), Congress expressed "a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 471 (5th Cir.2002). When considering a motion to compel arbitration, the court must first determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (citation omitted)).

In deciding whether the parties agreed to arbitrate, the court must apply the applicable state law governing contract formation. *First Options v. Kaplan*, 514 U.S. 938 (1995). "Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration." *In re Online Travel Co.*,

2

953 F. Supp. 2d. 713, 718 (N.D. Tex. 2013) (citations omitted). "[A] written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 409, 412 (5th Cir. 2004) (internal quotation marks and citations omitted). If the court finds that the parties agreed to arbitrate, the court must then determine "whether the dispute is within the scope of that agreement." *Title*, 463 F.3d at 418. "Where the arbitration clause is broad, it is only necessary that the dispute touch matters covered by the agreement to arbitrate." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998).

"When the agreement's terms do not expressly state whether a signatory may be compelled to arbitrate with a nonsignatory, [courts] have drawn on various theories of contract and agency law, including equitable estoppel, to determine a nonsignatory's rights and duties under an arbitration clause." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381-82 (5th Cir. 2008) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan.*, 345 F.3d 347 (5th Cir. 2003)). These theories of contract and agency law include incorporation by reference, assumption, agency, veil-piercing/alter ego, estoppel, and third-party beneficiary. *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 365 (S.D. Tex. 2006), *aff'd,* 322 F. App'x 410 (5th Cir. 2009); *see, also*, *Bridas*, 345 F.3d at 356.

## III. ANALYSIS

*A. The agreement between Goodwin and Defendant is a valid agreement to arbitrate.*

The Court must first determine whether the Arbitration Agreement is a valid agreement between the parties to arbitrate under Texas law. *First Options*, 514 U.S. at 938; *Tittle*, 463 F.3d at 418. Taking the written Arbitration Agreement as prima facie valid, the Plaintiffs must

3

demonstrate that grounds exist at law or in equity to avoid the agreement. *Freudensprung*, 379 F.3d at 412. In their response, Plaintiffs object to the Arbitration Agreement's provision that "the arbitrator shall have no authority to conduct class-wide arbitration, private attorney general arbitration or multiple-party arbitration." ECF No. 21-2 at 10. They assert that the provision invalidates the Agreement because "it improperly goes beyond setting the venue for deciding claims to attempting to restrict the substantive rights of Plaintiffs by stating 'no party may act as a private attorney general.'" ECF Nos. 23 at 3; 23-1 at 9. Plaintiffs contend "[t]he nebulous prohibition on action as a 'private attorney general' is an invitation for Defendant to have an arbitrator strike statutory and treble damages and to attempt to limit the claim to 'actual damages.'" ECF No. 23 at 8. Additionally, Plaintiffs argue that the Arbitration Agreement "seeks to substantially alter the substantive rights of the parties contrary to public policy." *Id.* at 7.

Though Plaintiffs cite a number of cases holding arbitration provisions invalid if they change substantive rights and remedies of the parties, Plaintiffs fail to support their argument that the Arbitration Agreement limits statutory damages or alters their substantive rights in this case. ECF No. 23 at 3-4. Neither Plaintiff seeks to bring this action as a class action or as a private attorney general. Therefore, the Arbitration Agreement neither limits the potential damages for either Plaintiff nor changes their substantive rights under the TCPA. The undersigned finds that the Arbitration Agreement is a valid and enforceable agreement between the parties to the Agreement.

*B. Goodwin's claims are within the scope of the Arbitration Agreement.*

Having found that a valid agreement to arbitrate exists, the Court must next determine whether the present dispute is within the scope of that agreement. *Tittle*, 463 F.3d at 418-19. "The duty to arbitrate remains one of contract; a court cannot compel parties to arbitrate issues they have

4

not agreed to submit." *Id.*; *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614 (1985)). "[In] the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986).

The Arbitration Agreement broadly subjects claims concerning "the servicing or collection of amounts due under the Credit Services Agreement or the Loan Agreement" to binding arbitration. ECF No. 21-2 at 9. The parties do not dispute that the alleged violations of the TCPA concern phone calls made by the Defendant in an attempt to collect the debt owed on the account pursuant to the Loan Agreement signed by Goodwin. Goodwin's claims fall squarely within the provisions of the Arbitration Agreement and must be submitted to binding arbitration. Dismissal of claims referred to arbitration may be made with prejudice. *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992). Accordingly, the undersigned RECOMMENDS that Judge O'Connor DISMISS WITH PREJUDICE Goodwin's claims in favor of binding arbitration as provided in the Arbitration Agreement.

*C. Deosaran's claims are not subject to the Arbitration Agreement.*

Deosaran alleged the same violations of the TCPA against the Defendant that Goodwin alleged. ECF No. 8. Unlike Goodwin, however, Deosaran never signed the Arbitration Agreement, the Loan Agreement, or any other document to which Defendant was a party. Nevertheless, Defendant contends that Deosaran's claims are subject to the Arbitration Agreement by operation of the doctrine of equitable estoppel. ECF Nos. 21 at 8, 25 at 2. Specifically, Defendant alleges that two forms of equitable estoppel, direct benefit estoppel and inextricably intertwined claims estoppel, apply to Deosaran's claims in this case. *Id.*

Generally, a party is not required to arbitrate a claim unless it has expressly agreed to do so. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). A nonsignatory may be equitably estopped from avoiding arbitration if the nonsignatory's claim arises from a contract which contains an enforceable arbitration clause. *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004). In essence, equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes as well." *Id.* It prevents a party from "having it both ways." *Id.* at 268.

In the case at bar, Deosaran's claims under the TCPA are standalone statutory claims that do not rely upon the terms of the Loan Agreement or the Arbitration Agreement. Goodwin and representatives of Defendant signed those documents, not Deosaran. Defendant fails to show that Deosaran pursued a claim under either agreement or derived a direct benefit from them. Since she seeks no benefit under the Loan Agreement, the Arbitration Agreement, or any other agreement to which Defendant is a party, the doctrine of direct benefits estoppel does not require arbitration of her claims against Defendant. The fact that Deosaran's claims arise from the TCPA itself and not from the written agreements between Goodwin and Defendant distinguishes this case from the two cases cited by Defendant on this point. In both of those cases, the nonsignatory-plaintiff asserted claims based upon agreements that also contained arbitration provisions, not claims arising from a statute such as Deosaran's claims. *See Bailey*, 364 F.3d at 260, and *Origen Financial, L.L.C. v. Thompson*, C.A. No. 3:07-cv-318-WHB-LRA, 2007 WL 3407391 (S.D. Miss. Nov. 15, 2007).

Likewise, the doctrine of intertwined claims estoppel does not apply to the facts of this case. The Fifth Circuit has recently held that the "intertwined claims theory governs motions to compel arbitration when a signatory-plaintiff brings an action against a nonsignatory-defendant asserting claims dependent on a contract that includes an arbitration agreement that the defendant

6

did not sign." *Janvey v. Alguire*, 847 F.3d 231, 242 (5th Cir. 2017) (citing *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527-28 (5th Cir. 2000)). The court in *Janvey* found that intertwined claims estoppel does not apply to the reverse situation, such as the case at bar, where a signatory-defendant seeks to compel arbitration with a nonsignatory-plaintiff. *Janvey*, 847 F.3d at 242 (citing *Bridas*, 345 F.3d at 356, 358–63 (5th Cir. 2003)).

Defendant did not assert any other recognized basis for compelling Deosaran to arbitration, and the Court notes that incorporation by reference, assumption, agency, veil-piercing/alter ego, and third-party beneficiary theories do not appear to apply here. *See Bridas*, 345 F.3d at 356; *Wood*, 458 F. Supp. 2d at 355.

Because Deosaran did not sign the Arbitration Agreement, and estoppel does not compel her to arbitrate her claims as urged by Defendant, the undersigned RECOMMENDS that Judge O'Connor DENY Defendant's Motion to Compel Arbitration and to Dismiss Action in regards to Deosaran's claims.

> D. *Judge O'Connor should stay Deosaran's case against Defendant pending resolution of the Goodwin arbitration.*

Citing Section 3 of the FAA, Defendant requested the Court to stay further proceedings in the case pending completion of arbitration if it does not dismiss the entire case or compel Deosaran to arbitrate her claims. "In general, Section 3 only applies to parties to an agreement containing an arbitration clause." *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 346 (5th Cir. 2002). The Fifth Circuit has "applied it to non-signatories only where: (1) the arbitrated and litigated disputes involve the same operative facts; (2) the claims asserted in the arbitration and litigation are 'inherently inseparable'; and (3) the litigation has a 'critical impact' on the arbitration." *Rainier 1, L.L.C. v. Rainier Capital Management, L.P.*, 828 F.3d 356, 360 (5th Cir. 2016) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) ("In some cases, . . . it

may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."); *Waste Mgmt.*, *Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004)).

Applying the three-part *Rainier* test, the undersigned recommends that Judge O'Connor stay further proceedings in the case following dismissal of Goodwin's claims so that those claims may proceed to arbitration. The claims at issue in the arbitration and those remaining in the lawsuit involve the same operative facts. Both proceedings concern the central question of whether Defendant had the right to make calls to the cell phone shared by Goodwin and Deosaran using an automated dialing system. The claims in both proceedings are "inherently inseparable" and involve a shared cell phone, claims of consent to use an automated dialing system by listing the cell phone number in loan documents, and revocation of consent. Finally, resolution of the litigation could have a "critical impact" on the arbitration if these key issues of consent and revocation of consent were determined in the lawsuit before they could be addressed by the arbitrator. Under these circumstances, Judge O'Connor should stay further proceedings in the case pending resolution of the Goodwin arbitration.

> E.    *The Court should dismiss Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 17) as moot.*

In light of the recommended rulings, Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 17) is not well-taken, and Judge O'Connor should dismiss it as moot.

## IV. CONCLUSION

The undersigned RECOMMENDS that Judge O'Connor GRANT Defendant's Motion to Compel Arbitration and to Dismiss Action (ECF No. 20) WITH PREJUDICE as to the claims of Plaintiff Raymond Goodwin and direct Goodwin and Defendant to binding arbitration, DENY

Defendant's Motion as to the claims of Plaintiff Lisa Deosaran, STAY Plaintiff Deosaran's claims during the pendency of the Goodwin arbitration, ORDER the Clerk to administratively CLOSE the case, ORDER Plaintiff Deosaran and Defendant to file a motion to reopen the case, if necessary, following conclusion of the arbitration, and DENY Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 17) as moot.

A copy of this findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed March 23, 2017.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE